Good morning, Your Honor. Stephen Geschel for used-to-be coach Jim Bolla. Welcome back to Honolulu for the nice weather we have and so forth. Thank you. And getting ready for this argument, I'd like to save about five minutes if I could. And I'll try to watch it, but you'll need to be watching it. I have a clock right here. I'll try to keep my left eye on it. In looking at the decision this morning that the district court made, Judge Mulway used the comparison between the football coach and Bolla, McMacken, who's no longer coach here, made that the crux of the comparison. But that's totally wrong. It was just one part of it. She seized upon that aspect. She said there were differences between the two, so it really wasn't relevant. It didn't prove anything in your case. No, she said that was the pivotal thing in this case. We didn't show, not we, but Bolla didn't show that what McMacken did in calling the Notre Dame players or doing a baguette dance or swinging a power chain and motivation had an impact on the players. Now, that's not the crux of it. The crux of pretext is what the management, what Donovan did, is that a phony reason for firing him? Well, how does McMacken work? What use is McMacken? The stuff that he did was far different from what your client is charged with. As you say, he did all these interesting things through a projector, a watering jug on a computer during a speech, brought in a power source, said Notre Dame players and baguettes and all this kind of stuff. Apparently, when he did that, he was under no warnings or anything like that. And there were no complaints by any of the players, so that seems to be quite distinguishable from the situation with your client where there were complaints from the players. So, take it out of the equation. It doesn't really matter. So you agree, McMacken doesn't have anything to do with the truth of your case? No, he does. It does have because it shows. How is he sufficiently similar or similarly situated or comparable? Because he did not have a complaint against him previously. He was not under investigation previously. He had not been warned previously. And none of the students had complained, apparently, about his conduct. So I'm just trying to figure out how were they similarly situated or comparable? It's a head coach that has been disciplined by the management. The disciplinary action... Was McMacken disciplined previously? Pardon? Who are you talking, when you say the head coach, are you talking about Mr. Bola? They're both head coaches. Right, okay. And I've got two questions. No, no, no, but I understand, but they're both very related, I believe. And I'm just trying to figure out if you can answer how they were comparable, how they were similarly situated, especially in light of what I just said right now. I was trying to, but it got interrupted. They're both head coaches, okay? They're comparable, okay? We've got a case that says they're both comparable. They're both men. It doesn't really matter. That's the whole point. But the UH said, well, you can't use that because the women's basketball players and the coach are not comparable to football. So I found a case that said they are, okay? So I thought I neutralized that, but apparently I didn't. But anyway, so back to your question. It sounds like, do you understand that you have to show that, that they were similarly situated? But I don't have to. I mean, I don't. The plaintiff doesn't have to. It's just one aspect of the pretext facts that we listed, 25 of them. You had submitted, though, that that was one of the reasons as to why. You're focusing on that one. Do you want to focus on any of the others, why the university's decision? Well, I listed them in the opening brief. You're here for argument. You want to submit it on the briefs, you want to argue. I want to argue it, but I'm saying that MacMacken, the comparison, that's only one of the facts that prove pretext. That's only one. But the judge made it the pivotal thing. Okay. First off, Donovan said, I'm not going to coach you. Bola said, help me out with it when he got warm. Help me out. And what did Donovan say? I'm not going to help you. And not only that, I'm going to treat you differently than the other coaches on the staff who have similar complaints. Now, if that isn't pretext, I don't know what is. Now, what did the judge say about that? Nothing. That's a very pivotal thing there. Precisely where in the record can I read exactly what you just said about Donovan's statement to your client? I'm going to treat you differently than the other coaches. Where's that in the record? Okay. 34. Bola's declaration, it meets paragraph 24 to 25. What's it say? Pardon? What does it say? Well, he refused to coach him. And that part where he says, I'm going to treat you differently from all the other coaches in connection with this problem that's before us. That's in Bola's declaration paragraph 21. I'm sorry, I didn't hear you. I'm over here looking in the record trying to find the page for it in the ER, but I think it's ER first volume. I mean, we've got, what, three inches of papers here. So it's in the excerpt of record 106. You're talking about the part where he says, we're going to treat you differently because this might turn into a lawsuit. Is that what you're talking about? I think so, yeah. I'm going to treat you differently, and he sure did. And not only that, but they dredged up those pre-2008 so-called complaints, and if you look at those, I was reading them over again yesterday, they look very similar to each other, and they were prepared not in 2004. They were assembled in 2008 because that's what Donovan wanted to do. He had to get rid of this guy because he was wanting to ameliorate the women's basketball team. I see I got 632 on your left, so. Do you want to reserve the rest of that time? Yes. Okay. Maybe I can find better record sites in the meantime, if I can get all my papers out of here. Good morning. May it please the Court, Anderson Meyer on behalf of all defendants. We've put forth in the briefing before the Court every argument addressing everything that's been raised by the appellant in his briefing. The key issues here are, number one, that the Prima Facie case, as Plaintiff has argued in his opening brief, the defendants still submit simply was not met here. Number two, even had it been met, as the District Court found, legitimate non-retaliatory reason here is unquestionable. The University conducted an investigation in 2009 into the allegations that Mr. Bola kicked one of his players during a practice. That investigation interviewed over 20 people, including 14 players. All of those players corroborated that the incident took place. I believe it was 10 out of 14 of those players described it as a kick and said that the kicked player teared up following the incident. Judge Malway found, we would submit properly, that that constitutes legitimate non-retaliatory reason in this case. The burden there on the defense is not terribly onerous in showing legitimate non-retaliatory reason. We would submit that a coach threatening to kick one of his players and then kicking that player during a practice more than satisfies the defense burden. Moving to pretext, which is where my colleague has focused the majority of his argument this morning, the District Court found that of the evidence and information that Bola provided to her, none of it was sufficiently specific and substantial to meet the burden that he has if all he's relying on is circumstantial evidence. What about this thing where in the declaration Bola states that on September 4, 2008, and I quote this, that Donovan supposedly said he had received almost identical complaints from athletes in other sports at UH, but the complaints against Bola were going to be handled differently because of a potential credible lawsuit against UH. Your Honor. In light of the evidentiary lay of the land, what do we make of that? Your Honor, that's contained only in Bola's declaration. You have to accept the facts in the light most favorable to Bola's declaration. Absolutely. When you use found, District Courts don't find facts. They don't find anything in some of the judgments. They just identify various things. That's correct. So that's there. That is there. That's correct, Your Honor. There's nothing else to support that, but putting that aside. There's nothing else to support that. I understand, Your Honor, because it's to be interpreted. I thought you were going to say he socked me in the head with a tire iron. There's nothing else to support that. It doesn't mean I get thrown out. Well, Your Honor, as far as whether that goes to pretext, if he was treated differently than another coach under allegedly similar circumstances, the reason that he was terminated was because he kicked a player. There's been no allegation in the pleadings or in the declaration submitted by Bola that this other unidentified coach that Donovan allegedly referred to had physically struck one of his players, or that he did so under circumstances where he was already on warning. That is inappropriate. I read this as suggesting that the women were going to sue the University of Hawaii unless they got rid of this coach. So we're dealing with you differently than we dealt with everybody else because we're afraid the women are going to sue the university. I'm not certain that you were. It wasn't about him suing the university. It seemed that the women basketball players were going to sue the university. And so the evidence says we're going to deal with you differently because we're afraid of the women suing the university. Doesn't that color pretext our everything here? Well, Your Honor. Your Honor, I think it's the threat of suit, according to this declaration, was with respect to this other coach as opposed to with respect to Coach Bola is how I read this. This is paragraph 21 on pages 9 and 10 of Mr. Bola's declaration that they were going to handle that other case differently because of a potential threat of a lawsuit against the university. I'm sorry, Your Honor. I misspoke. Pardon me. I misread that. Yeah, you did. Yep. If I understand correctly, Your Honor, the standard of review looking at pretext is a clearly erroneous standard. And we would submit that... There's no finding of facts. This is a question of whether there's enough here to create a genuine issue that has to be decided by a jury, a court. Okay. It's clearly erroneous as a standard review that relates to findings of fact. There are no findings in summary judgment. This is just whether you get far enough to go past that stage to have a fact-finding... I understand, Your Honor. It's de novo, Your Honor. But the pretext issue, though, Your Honor, we would submit even if we take this one fact that Your Honor is focusing on from the declaration, the district court said in her order that the entire declaration and everything submitted by Mr. Bola did not constitute appropriately sufficient and substantial. And we would submit, Your Honor, even taking that allegation in the declaration as true as the court must, that alone is not sufficiently specific and substantial to overcome the legitimate, non-retaliatory reason that the university provided. That was supported by all the investigation, by all of the interviews, none of which has been contested on the record before this court. He doesn't admit it was a kick. He said it was a nudge. That's correct, Your Honor. He's gone back and forth between nudge, push. In his opening brief, there are two references to a kick as well. He did admit in discovery that his foot made contact with the player and that she teared up afterwards. There's in the meeting that Mr. Donovan had with Mr. Bola and his union representative immediately after he received the fact-finding report, Mr. Bola did not deny that his foot had made contact with this player. So what we're talking about here, Your Honor, is as the fact-finding investigation found, as Mr. Donovan found, was inappropriate contact between this coach and this player. Respectfully, Your Honor, I think that the timeline of events here and the notice that this coach was on as a result of the 2008 fact-finding investigation and the 2008 written reprimand, he was already on notice that continued inappropriate behavior would result in immediate discipline up to and including discharge. That's exactly right, Your Honor. As Your Honor noted at the beginning of my colleague's argument, the McMacken situation has nothing to do with what happened with Coach Bola. There's been, and as the district court discussed, there's nothing on the record here to show that they were similarly situated. Thank you, Your Honor. In 2008, when Mr. Donovan took on the role as athletics director, he met with all the coaches, and it was in March of 2008 that he met with Coach Bola. Immediately thereafter, Donovan and others in the athletic department began to receive complaints from these students. That's what triggered, in April of 2008, the appointment of the fact-finding investigators for that 2008 fact-finding investigation. How far back did the fact-finding investigation go for student complaints? The fact-finding investigation went back as long as there were student evaluations for this coach. The coach started in 2004, so the investigators looked at student evaluations going back to 2004. However, Your Honor, they did not limit their investigation to all of these pre-contract renewal evaluations. Recall that Coach Bola's contract was renewed in 2007. The 2008 fact-finders, they looked at all of the evaluations, which included 2004-2005 season, 2006-2007, 2007-2008. Four of the six written complaints from students that actually triggered this 2008 investigation were from 2008. Also, the fact-finders reviewed 13 evaluations from students that contained complaints that were from the 2007-2008 season. So, it's been represented to the court that the fact-finding investigators in 2008 looked back all the way to 2004, and they shouldn't have, and that they focused primarily on the 2004. And, Your Honor, that's simply not correct. They did look at 2004, because they looked at all evaluations from the beginning of Coach Bola's tenure at the university up to the time that the investigation began. When was the kicking episode? Kicking? Which year was that? That was in 2008. The players have each said that it was pre-season 2008, and they each put it in November. Bola, in his declaration, has taken issue with that and said that it was in October. But October, November, pre-season 2008 in a practice is where the kicking took place. The student who was kicked then went to Donovan in February 2009. And Donovan, upon receiving that information, immediately appointed human resource specialists as fact-finders to do their investigation, the result of which was the decision to terminate Coach Bola. Now, as I mentioned a moment ago, Coach Bola was given every opportunity to deny that he had had either this inappropriate exchange, verbal exchange with the student, or that he had made physical contact with the student, and he didn't deny it at the time of the termination letter, when he was in March of 2009, when he was given the opportunity to meet with Donovan to discuss it. And in the course of discovery and litigation, when asked whether he made these sorts of statements, he admitted that. When asked whether his foot made contact with the rear end of one of his players during a November or October 2008 practice, he admitted that as well. That was the basis for the university's decision to terminate his employment contract. And the university defendants respectfully submit that that not only satisfies the legitimate non-retaliatory reason aspect, but given that, and given the prior written warning, putting him on express notice that any further inappropriate conduct could lead to termination, that even with the otherwise unsupported information in Coach Bola's declaration, the pretext argument put forward by my colleague simply is not sufficient to defeat summary judgment here. With that, if the Court has no further questions, thank you very much for your time. Thank you. The cite on that Bola is in the excerpt to Record 107. It's in Volume 1. At 9-11. Now, I think that the Court needs to consider the context in which all of these so-called student complaints came forward. And the pre-2008 complaints are listed by this fact-finding mission that Donovan started so he could line up and fire Bola, was not according to the student-athlete handbooks and all of the records. Somebody had to trigger this thing because none of those complaints, as I recall, were in his personnel file. In fact, my client said in his affidavit or declaration that he never reviewed those with Herman Fraser. Herman Fraser was this world-class 440 guy from ASU and he was hired by the university and then he got rid of Donovan when he came on board, as I understand it. So now, when Fraser got removed because June Jones didn't get rehired or there was a scheduling problem, then in comes Donovan. So Donovan's in the picture now and he has a meeting with the coaches and says, what do you guys want? And my client gives him a big old long list of what he needs for the women's program. And that's when all these pre-2008 things started surfacing. So when was he given the warning, one more incident like this and you could be fired? And who gave it to you? My recollection, I think that was in September. Before the nudging or the kicking? Yes. I may be mistaken on the date, but it was before the October 2008 practice session. That was fully in effect? Yes. One more thing like this? Yes. So he was given a warning? That's correct. And who gave him that warning, Fraser? No, he was long gone. Donovan's on the scene in 2000. Donovan did? Yes. Donovan told him one more and you could be in trouble? Well, you're going to get disciplined. He didn't say exactly what he was going to do is open-ended because he's waiting around for something else to happen. Now, mind you, this is coaching. Now, they're in their practice. They're practicing. And the coach is trying to get the players to do what he wants because this is a disciplined offense or a disciplined defense. And the student athletes have to do what the coach wants. They need discipline. That's the way it used to work, Counselor. Pardon? That's the way it used to work. I'm not sure it works that way. Well, okay. So that's why, you see, that's why Fraser hired Bola because he was a successful coach over at Las Vegas, and he'd been to the Final Four and all that. He had results, so they needed results. They brought in Bola, coach. They got specialized knowledge. Use it. Donovan comes on the scene. We're getting rid of you because I found out some other student athletes are complaining about you. Specialized knowledge doesn't necessarily mean knowing these women. He knew where they could put the ball if they kept throwing one-arm passes. I mean, that has nothing to do with knowledge. That's kind of the way he was dealing with these women. That's the technique that he used. I've worked with men 30 years, and I'm not sure it works that way. Putting his foot on the players. His version is that he pushed her or nudged her, and he has a bad right knee from surgery. He stood on his left leg and pushed her in position. Now, these are genuine issues of material fact. You know, the test on a motion for summary judgment, are there issues of material fact? Not how it's going to be decided. He doesn't deny putting his foot on the player's backside. That's true. That is true. And he doesn't deny making these statements that the player said that he made. Well, now, he did say them, but see, they were taken out of context. Like the deal about, I'm going to break your arm. Well, it wasn't just her arm. It didn't have anything to do with the butt incident, Your Honor. It was an expletive before the arm. Pardon? It was an expletive before the arm. Well, it was in the coaching. He says, you know, when I was playing ball. That's the problem. It's not that way anymore, Counselor. Women weren't even allowed to play when you and I were playing ball. Well, that was a big mistake. But now we're in what we've got. And he's coaching. He knows how to get the job done. And they wouldn't let him get the job done because they picked him and micromanaged him to death. And that's what happened. He got fired. And that's not right. He should have his right to go to trial by jury. And Judge Mulway needs to be told that. Send this case back. Let's go have a trial and let the jury be the lie detector, not Judge Mulway. That's not the district court's function. It's are there genuine issues of material fact. If there are, then it goes to trial. But when you have paper war, that's what you get now. I guess we don't even have a right to have a jury trial anymore. We just throw everything out and let the appellate court deal with it. Well, here we are. And you're just like the district judge. De novo. So send this back, please. And thank you very much for everything. Thank you very much. This case will also be submitted. Thank you all for your arguments here today. We'll be in recess. Thank you. All rise. This court for this session stands adjourned.
judges: Goodwin, Trott, Murguia